*145 OPINION OF THE COURT
Renee R. Roth, S.
The issue before the court in this construction proceeding is whether testator Henry Bradley Martin authorized his executors under article twenty-fourth of his will to sell his extensive library collection at a price "less than full market value” thereby imperiling the marital deduction for the QTIP trust established for his wife.
The major asset of Mr. Martin’s estate consists of an extraordinary library collection. Included among the collection are Sir Thomas Moore’s "Utopia” printed in 1516, Shakespeare’s "Rape of Lucrece” (1594), the first English translation of St. Augustine’s "Confessions”, the second edition of Chaucer’s complete works (1542), a first printing of the Declaration of Independence and George Washington’s own copy of the "The Federalist”. Valued by his executors at $40,000,000 in their Federal estate tax return (form 706), the collection constitutes approximately 80% of decedent’s estate.
Under article eleventh of his will, testator created a trust of his entire residuary for the life income benefit of his wife. The library collection is an asset of this residuary trust. As testator expressly provided, his executors have elected to qualify the entire residuary trust for the marital deduction as a QTIP trust (26 USC § 2056 [b] [7]).
The executors are concerned that the marital deduction may be threatened because of article twenty-fourth of the will. They seek construction of such article which grants special powers to Mr. Martin’s fiduciaries in dealing with the library collection. One of the provisions empowers his fiduciaries to determine whether the collection shall be sold intact to a single purchaser or sold in parts to separate purchasers and if sold in such parts, to determine which special parts shall be kept and sold to single purchasers. The provision within article twenty-fourth which the petitioners contemplate may cause a tax problem is the one which authorizes them to sell such entire collection or special part thereof at a price "less than full market value” if in their consideration such a sale could result in keeping the collection or special parts thereof intact.
The executors contend that adverse tax consequences may result because of the requirements for qualifying a QTIP trust under the Economic Recovery Tax Act of 1981 (ERTA). Under ERTA, a disposition of property, unlimited in amount, to a *146 surviving spouse may qualify for the marital deduction as qualified terminable interest property if (1) the property passes from a decedent to a surviving spouse, (2) the surviving spouse receives all the income from the property for life, (3) such income is paid to the surviving spouse not less than annually, (4) there is no power in anyone to appoint any part of the property subject to the qualifying income interest to any person other than the surviving spouse and (5) the decedent’s executor elects to qualify the property on the estate tax return (26 USC § 2056 [b] [5]). The purpose of these detailed requirements is to ensure that, while the interspousal transfer is tax free, ultimately the assets of the QTIP (the library collection in this case) will be taxed in the surviving spouse’s estate upon his or her death.
The petitioners are concerned that the provision in article twenty-fourth which authorizes them to sell the library collection below market value will be deemed to be a "power * * * to appoint any part of the property to any person other than the surviving spouse” (Prop Treas Reg § 20.2056[b]-7 [c] [1] [ii], 49 Fed Reg 21350-03 [1984]) and that consequently the collection will not be treated as qualified terminable interest property for the marital deduction.
Although they have filed renunciations of the questionable power, because of the uncertainty of the effectiveness of such renunciation (see, Matter of Witz, 95 Misc 2d 36; Cleaveland v United States, 88-1 US Tax Cas [CCH] ¶ 13,766), petitioners request that the court effectuate Mr. Martin’s actual intention, as expressed in his will, that the entire residuary trust pass free of estate tax by virtue of the marital deduction.
There does appear to be a conflict between the provisions of article twenty-fourth and the provisions of article eleventh of Mr. Martin’s will, but only if Mr. Martin intended in article twenty-fourth to authorize his fiduciaries to sell the library collection at less than market value.
A review of decedent’s will establishes that Mrs. Martin was the primary object of his bounty and that he provided that his estate would benefit from the maximum «generation-skipping tax (GST) exemption and marital deduction.
The will contains many illustrations of careful tax planning. For example, article eleventh (C) authorizes the executors to qualify the residuary trust for the marital deduction as a QTIP but adds that if Mrs. Martin dies before the election is made they should consider whether the combined estate taxes *147 would be lower without such an election. In order to qualify the non-income-producing assets for the marital deduction, article twentieth authorizes the widow to direct the fiduciaries to make the residuary trust productive of income (26 CFR 20.2056[b]-5 [¶] [4]). Article eighteenth provides for the allocation of the GST exemption and the severance of trusts to facilitate the creation of trusts with inclusion ratios of zero or one. Article nineteenth sets forth careful directions for tax apportionment.
It is clear that Mr. Martin intended that the entire residuary estate, including the library collection, pass to his wife’s trust free of estate taxes as a QTIP. The draftsman states by affidavit that he suggested the language at issue to provide additional flexibility for the fiduciaries and that testator was not advised that such language might imperil the marital deduction. It is observed that although where possible, the testator’s intent must be gleaned from the four corners of the will itself, if, as here, ambiguity exists, extrinsic evidence may be admitted and taken into account (e.g., Matter of Martin, 255 NY 248; Matter of Lust, 35 AD2d 997; Matter of Khadad, 135 Misc 2d 67; Estate of Liebowitz, NYLJ, Feb. 16, 1989, at 26, col 4) to ascertain testator’s true intention without regard to whether ambiguity is latent or patent (Matter of Liebowitz, supra; Estate of Heaslip, NYLJ, Oct. 24, 1988, at 26, col 5; Estate of Stieg, NYLJ, Apr. 12, 1982, at 17, col 1).
The court therefore construes article twenty-fourth to provide that none of the special powers contained therein, and particularly the power to sell the entire library collection, or parts thereof, at less than full market value, was ever intended by testator to be exercised if such exercise could imperil his primary intention that the library collection pass to the residuary trust free of estate taxes as qualified terminable interest property. Because of the tax considerations manifested in his will, it is unlikely that Mr. Martin intentionally gave his fiduciaries a power that could materially erode the marital deduction. Unless article twenty-fourth is construed as petitioners request, most of Mr. Martin’s sophisticated tax planning could have no effect because a power in an unrelated provision dissipates the marital deduction. Since the library collection represents the major portion of the estate Mr. Martin left to his wife, he clearly would have provided specific direction if he had attached any real significance to the powers in article twenty-fourth. The relevant provision of article twenty-fourth is thus construed to preclude the fidu *148 ciaries from selling the library collection or any part thereof at less than full value since such a sale would be contrary to testator’s intent that the collection qualifies as QTIP.
New York law requires construction of testator’s will so that it effects his actual and declared intent. "Once ascertained, intention controls, and the court may add, excise, modify or transpose language or provisions to bring it into harmony with and effectuate the testator’s intent” (Matter of Lepore, 128 Misc 2d 250, 251; see also, Matter of Snide, 52 NY2d 193; Matter of Goldstein, 46 AD2d 449, affd 38 NY2d 876). In this case, it is sufficient to forbid the fiduciaries from acting contrary to testator’s actual intent as manifested in the will as a whole.
Various constructional preferences also support this ruling. For example, a testator is presumed to intend to take full advantage of tax exemptions and deductions authorized by Federal and State tax law (Matter of Olson, 77 Misc 2d 515, 520). There is a preference for a construction which favors a surviving spouse (Matter of Berger, 57 AD2d 591; Matter of Snowden, 235 App Div 862; Matter of Olson, supra). Finally, New York courts have consistently construed and even reformed wills where necessary to avoid unintended adverse tax consequences (Matter of Choate, 141 Misc 2d 489, 491; Matter of Khadad, supra; Matter of Lepore, supra; Matter of Avery, 124 Misc 2d 601; Matter of Kander, 115 Misc 2d 386; Matter of Witz, supra; Matter of Stalp, 79 Misc 2d 412).
Reformation is not necessary in the present case. The construction granted by this decision accords in full with testator’s dispositive intent. No alteration of the will is required to effectuate Mr. Martin’s actual intent as manifested in his will.
Finally, this construction does not avoid taxes on this important library collection but merely postpones them until Mrs. Martin’s death at which time the full value of the collection will be taxable in her estate.
The guardian ad litem, Paul H. Asofsky, appointed for infant remaindermen, concurs in this result. The court expresses its appreciation to Mr. Asofsky for the quality of his report which was helpful in the preparation of this opinion.